# EXHIBIT A



**KSB / ALL**
**Transmittal Number: 22924562**
**Date Processed: 03/18/2021**

# Notice of Service of Process

| Primary Contact: | Venessa C. Wickline Gribble<br>The Kroger Co.<br>1014 Vine Street<br>Cincinnati, OH 45202-1100 |
|---|---|

| Entity: | The Kroger Co.<br>Entity ID Number  2171751 |
|---|---|
| Entity Served: | The Kroger Company |
| Title of Action: | Elias Muniz vs. The Kroger Company |
| Matter Name/ID: | Elias Muniz vs. The Kroger Company (11058934) |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Discrimination |
| Court/Agency: | Orange County Superior Court, CA |
| Case/Reference No: | 30-2021-01186338-CU-OE-NJC |
| Jurisdiction Served: | California |
| Date Served on CSC: | 03/17/2021 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Ronald L. Zambrano<br>213-927-3700 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

Electronically Filed by Superior Court of California, County of Orange, 02/26/2021 10:48:25 AM.
30-2021-01186338-CU-OE-NJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

THE KROGER COMPANY, an Ohio corporation; and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELIAS MUNIZ, as an Individual;

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* X̶X̶ Orange County Superior Court<br>North Justice Center<br>1275 North Berkeley Avenue<br>Fullerton, CA 92832 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2021-01186338-CU-OE-NJC<br><br>Judge Craig Griffin |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ronald L. Zambrano, 350 South Grand Avenue, Suite 3325, Los Angeles, California 90071; 213-927-3700

| DATE:<br>*(Fecha)* 02/26/2021 DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* H. McMaster | , Deputy<br>*(Adjunto)* |
|---|---|---|
| | Hailey McMaster | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* The Kroger Company, an Ohio corporation

   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Case 8:21-cv-00706  Document 1-1  Filed 04/16/21  Page 4 of 30  Page ID #:11
Electronically Filed by Superior Court of California, County of Orange, 02/26/2021 10:48:25 AM.
30-2021-01186338-CU-OE-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Hailey McMaster, Deputy Clerk.

1  Neama Rahmani (State Bar No. 223819)
2  *efilings@westcoasttriallawyers.com*
   Ronald L. Zambrano (State Bar No. 255613)
3   *ron@westcoasttriallawyers.com*
   Sandra Acosta Tello (State Bar No. 315616)
4   *sandra@westcoasttriallawyers.com*
   WEST COAST EMPLOYMENT LAWYERS, APLC
5  350 South Grand Avenue, Suite 3325
   Los Angeles, California 90071
6  Telephone: (213) 927-3700
7  Facsimile: (213) 927-3701

8
   Attorneys for Plaintiff,
9  ELIAS MUNIZ

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              FOR THE COUNTY OF ORANGE          **Assigned for All Purposes**
12                                                **Judge Craig Griffin**

13  ELIAS MUNIZ, as an Individual;          Case No.: **30-2021-01186338-CU-OE-NJC**

14            Plaintiff,                      **COMPLAINT FOR DAMAGES**

15                                            1)  FEHA DISABILITY DISCRIMINATION;
16            v.

17  THE KROGER COMPANY, an Ohio              2)  FAILURE TO ENGAGE IN THE INTERACTIVE
    corporation; and DOES 1 through 10,          PROCESS; AND
18  inclusive,
                                             3)  FAILURE TO ACCOMMODATE; AND
19
            Defendants.                      4)  RETALIATION IN VIOLATION OF FEHA
20

21

22                                              **DEMAND FOR JURY TRIAL**

23

24          COMES NOW, Plaintiff ELIAS MUNIZ (hereinafter referred to as "MUNIZ") who hereby

25  respectfully alleges and avers as follows:

26  //

27  //

28  //

_____

COMPLAINT AND DEMAND FOR JURY TRIAL
1

**INTRODUCTION**

1. This is an action brought by the Plaintiff pursuant to California statutory, decisional, and regulatory laws. Plaintiff was employed by Defendant THE KROGER COMPANY (hereinafter referred to as "KROGER"), at all times herein mentioned.

2. Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiff has an entitlement to monetary relief on the basis that Defendants violated such statutes, decisional law, and regulations.

**JURISDICTION AND VENUE**

3. Jurisdiction is proper in this court by virtue of the California statutes, decisional law, and regulations, and the local rules under the Orange County Superior Court Rules.

4. Venue in this Court is proper in that Defendant KROGER has a principal business address located at 850 S Cypress Street, in the City of La Habra, County of Orange, State of California.

**PARTIES**

5. At all times herein mentioned, Plaintiff MUNIZ is and has been a resident of Los Angeles County, State of California.

6. Defendant THE KROGER COMPANY is and at all times herein mentioned has been an Ohio corporation with the capacity to sue and to be sued, and doing business, with a principal place of business located at 850 S Cypress Street, La Habra, California 90631.

//

//

7.   Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within and outside the scope and purpose of said agency and employment. Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

8.   The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

## **FACTUAL ALLEGATIONS**

9.   On or about July 27, 2015 Plaintiff Muniz, a disabled male, began working for Defendant KROGER as a Plant Planner Administrative.   In or around 2017, Plaintiff MUNIZ demonstrated great work performance and was promoted to a Manufacturing Maintenance Planner position.

10.   On or about March 2018 Plaintiff suffered a knee injury. Plaintiff MUNIZ advised Mike Van De Wyngaerde, the Plant Engineer for La Habra Bakery, ("VAN DE WYNGAERDE") of his injury at the time. Plaintiff did not require any light duty immediately following this injury. However, Plaintiff's knee condition worsened over time.

11.   On or about late September 2019 Moh Al Janabi (hereinafter referred to as "AL JANABI") started working as a supervisor at the same location as Plaintiff.

12.   On or about November 8, 2019, Plaintiff MUNIZ received a doctor's note stating that MUNIZ be placed on light duty and for remote work to be made available for Plaintiff due to his knee issues. Plaintiff gave the doctor's note to VAN DE WYNGAERDE. Plaintiff MUNIZ was told to work remotely as a backup planner and to train Trenton Lyhane ("LYHANE").

13.   On or about December 3, 2019, VAN DE WYNGAERDE reached out to Plaintiff MUNIZ to ask for updates regarding a potential knee surgery timeline for Plaintiff MUNIZ.

14.   On or about December 6, 2019, after working from home for nearly a month with no significant issue, Plaintiff MUNIZ received a telephone call from AL JANABI. AL JANABI berated MUNIZ about backlog issues and went on to insist "well, you're going to have to work above and beyond your hours." After the Plaintiff explained that he has been working on resolving the backlog of work for the past several months and continued to work on processing the backlog as quickly as he could, AL JANABI responded by asking "*what have you been doing here since you've been here*?".

15.   On or about December 20, 2019, AL JANABI sent an email to the Maintenance team stating that LYHANE will be the on-site primary planner and Plaintiff MUNIZ will be working remotely whenever LYHANE needs his assistance. The email did not specify an end date to this arrangement. Plaintiff MUNIZ continued to do planning, work on the backlog, worked on reports, assisted corporate reporting and performed the majority of his job tasks remotely.

16.   On or about December 27, 2019, Plaintiff MUNIZ approached GONZALEZ, a Senior Human Resources representative at KROGER, about his December 6th telephone call with AL JANABI. Plaintiff MUNIZ explained AL JANABI's acrimonious remarks during the conversation, as well as AL JANABI's overall demeanor towards MUNIZ in the past several months. GONZALEZ responded, "we're going to need to investigate this, I will get back to you."

17. On or about January 2020, Plaintiff MUNIZ received a telephone call from VAN DE WYNGAERDE asking the Plaintiff to come to the plant that day. Plaintiff encountered both VAN DE WYNGAERDE and AL JANABI in AL JANABI's office. During the conversation, VAN DE WYNGAERDE explained that it is in the best interest of the company for Plaintiff MUNIZ to take a leave of absence because they do not have the budget to maintain two backup planners.

18. On or about January 27, 2020, GONZALEZ called Plaintiff and stated that management had decided it would be best for him to take a medical leave and that she would be contacting the Plaintiff soon with the necessary paperwork. No further explanations or reasons were given for his sudden placement on medical leave. Plaintiff MUNIZ again mentioned his complaints, but GONZALEZ did not respond to MUNIZ's inquiries. Shortly afterwards, Plaintiff MUNIZ had his work desktop shut down and became excluded from all his department contacts and emails.

19. On or about February 4, 2020, Plaintiff received medical leave paperwork and was instructed to fill them out by HR. He received no further correspondence regarding his complaints. Plaintiff regularly informed HR of any developments with his medical issues during his forced medical leave.

20. On or around January 30, 2021 Plaintiff MUNIZ received COBRA paperwork from HR via email, signaling to MUNIZ that he has been terminated.

21. Plaintiff MUNIZ has timely filed a Complaint of Discrimination with the Department of Fair Employment and Housing and obtained a Right to Sue letter dated April 2, 2020. As such, Plaintiff has exhausted his administrative remedies to pursue claims under the Fair Employment and Housing Act ("FEHA").

//

//

# FIRST CAUSE OF ACTION

## FEHA Disability Discrimination

### (Plaintiff MUNIZ Against ALL Defendants)

22. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

23. Defendant KROGER is a business entity regularly employing at least the minimum number of employees upon which certain legal duties and obligations arise under various laws and statutes, including the FEHA. At all times herein mentioned in this complaint, Government Code § 12940 and Government Code § 12926.1 were in full force and effect, were binding on the Defendants, and the Defendants were subject to their terms.

24. On or about July 27, 2015 Plaintiff Muniz, a disabled male, began working for Defendant KROGER as a Plant Planner Administrative. In or around 2017, Plaintiff MUNIZ demonstrated great work performance and was promoted to a Manufacturing Maintenance Planner position.

25. On or about March 2018 Plaintiff suffered a knee injury. Plaintiff MUNIZ advised Mike Van De Wyngaerde, the Plant Engineer for La Habra Bakery, ("VAN DE WYNGAERDE") of his injury at the time. Plaintiff did not require any light duty immediately following this injury. However, Plaintiff's knee condition worsened over time.

26. On or about late September 2019 Moh Al Janabi (hereinafter referred to as "AL JANABI") started working as a supervisor at the same location as Plaintiff.

27. On or about November 8, 2019, Plaintiff MUNIZ received a doctor's note stating that MUNIZ be placed on light duty and for remote work to be made available for Plaintiff due to his knee issues. Plaintiff gave the doctor's note to VAN DE WYNGAERDE. Plaintiff MUNIZ was told

to work remotely as a backup planner and to train Trenton Lyhane ("LYHANE").

28.   On or about December 3, 2019, VAN DE WYNGAERDE reached out to Plaintiff MUNIZ to ask for updates regarding a potential knee surgery timeline for Plaintiff MUNIZ.

29.   On or about December 6, 2019, after working from home for nearly a month with no significant issue, Plaintiff MUNIZ received a telephone call from AL JANABI. AL JANABI berated MUNIZ about backlog issues and went on to insist "well, you're going to have to work above and beyond your hours." After the Plaintiff explained that he has been working on resolving the backlog of work for the past several months and continued to work on processing the backlog as quickly as he could, AL JANABI responded by asking *"what have you been doing here since you've been here?"*.

30.   On or about December 20, 2019, AL JANABI sent an email to the Maintenance team stating that LYHANE will be the on-site primary planner and Plaintiff MUNIZ will be working remotely whenever LYHANE needs his assistance. The email did not specify an end date to this arrangement. Plaintiff MUNIZ continued to do planning, work on the backlog, worked on reports, assisted corporate reporting and performed the majority of his job tasks remotely.

31.   On or about December 27, 2019, Plaintiff MUNIZ approached GONZALEZ, a Senior Human Resources representative at KROGER, about his December 6th telephone call with AL JANABI. Plaintiff MUNIZ explained AL JANABI's acrimonious remarks during the conversation, as well as AL JANABI's overall demeanor towards MUNIZ in the past several months. GONZALEZ responded, "we're going to need to investigate this, I will get back to you."

32.   On or about January 2020, Plaintiff MUNIZ received a telephone call from VAN DE WYNGAERDE asking the Plaintiff to come to the plant that day. Plaintiff encountered both

1    VAN DE WYNGAERDE and AL JANABI in AL JANABI's office. During the conversation,
2    VAN DE WYNGAERDE explained that it is in the best interest of the company for Plaintiff
3    MUNIZ to take a leave of absence because they do not have the budget to maintain two backup
4    planners.

5

6  33.  On or about January 27, 2020, GONZALEZ called Plaintiff and stated that management had
7       decided it would be best for him to take a medical leave and that she would be contacting the
8       Plaintiff soon with the necessary paperwork. No further explanations or reasons were given for
9       his sudden placement on medical leave. Plaintiff MUNIZ again mentioned his complaints, but
10      GONZALEZ did not respond to MUNIZ's inquiries. Shortly afterwards, Plaintiff MUNIZ had
11      his work desktop shut down and became excluded from all his department contacts and emails.

12

13 34.  On or about February 4, 2020, Plaintiff received the medical leave paperwork and was
14      instructed to fill them out by HR. He received no further correspondence regarding his
15      complaints. Plaintiff regularly informed HR of any developments with his medical issues
16      during his forced medical leave.

17

18 35.  On or around January 30, 2021 Plaintiff MUNIZ received COBRA paperwork from HR via
19      email, signaling to MUNIZ that he has been terminated.

20

21 36.  Plaintiff MUNIZ is informed and believes that his disability was a factor in Defendant
22      KROGER's decision to place him on leave.

23

24 37.  Defendants' conduct above described is in violation of various statutes and the decisional law
25      of this state and country, including but not limited to, California Government Code 12940 et
26      seq.

27  //

28  //

38. As a direct and legal result of Defendants' discrimination against Plaintiff for his disability, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, all to his damage in an amount according to proof.  Plaintiff claims such amounts as damages pursuant to California Civil Code 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

39. The above-cited conduct of Defendants was done with malice, fraud and oppression, and in reckless disregard of Plaintiff's rights under the FEHA. Defendants consciously, intentionally, and in conscious disregard of his rights discriminated against Plaintiff because of his disability. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

40. As the result of Defendants discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

## SECOND CAUSE OF ACTION

### Failure to Engage in the Interactive Process

### (Plaintiff MUNIZ Against ALL Defendants)

41. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

42. Plaintiff, at all relevant time herein, suffered from a FEHA protected disability.

43. Defendants were aware of Plaintiff's disability, set forth in detail above, because Plaintiff informed them of his disability and corresponding doctor visits.

//

44. On or about July 27, 2015 Plaintiff Muniz, a disabled male, began working for Defendant KROGER as a Plant Planner Administrative.   In or around 2017, Plaintiff MUNIZ demonstrated  great work performance  and was promoted to a Manufacturing Maintenance Planner position.

45. On or about March 2018 Plaintiff suffered a knee injury. Plaintiff MUNIZ advised Mike Van De Wyngaerde, the Plant Engineer for La Habra Bakery, ("VAN DE WYNGAERDE") of his injury at the time. Plaintiff did not require any light duty immediately following this injury. However, Plaintiff's knee condition worsened over time.

46. On or about late September 2019 Moh Al Janabi (hereinafter referred to as "AL JANABI") started working as a supervisor at the same location as Plaintiff.

47. On or about November 8, 2019, Plaintiff MUNIZ received a doctor's note stating that MUNIZ be placed on light duty and for remote work to be made available for Plaintiff due to his knee issues. Plaintiff gave the doctor's note to "VAN DE WYNGAERDE. Plaintiff MUNIZ was told to work remotely as a backup planner and to train Trenton Lyhane ("LYHANE").

48. On or about December 3, 2019, VAN DE WYNGAERDE reached out to Plaintiff MUNIZ to ask for updates regarding a potential knee surgery timeline for Plaintiff MUNIZ.

49. On or about December 6, 2019, after working from home for nearly a month with no significant issue, Plaintiff MUNIZ received a telephone call from AL JANABI. AL JANABI berated MUNIZ about backlog issues and went on to insist "well, you're going to have to work above and beyond your hours." After the Plaintiff explained that he has been working on resolving the backlog of work for the past several months and continued to work on processing the backlog as quickly as he could, AL JANABI responded by asking "*what have you been doing here since you've been here*?".

50.  On or about December 20, 2019, AL JANABI sent an email to the Maintenance team stating that LYHANE will be the on-site primary planner and Plaintiff MUNIZ will be working remotely whenever LYHANE needs his assistance. The email did not specify an end date to this arrangement. Plaintiff MUNIZ continued to do planning, work on the backlog, worked on reports, assisted corporate reporting and performed the majority of his job tasks remotely.

51.  On or about December 27, 2019, Plaintiff MUNIZ approached GONZALEZ, a Senior Human Resources representative at KROGER, about his December 6th telephone call with AL JANABI. Plaintiff MUNIZ explained AL JANABI's acrimonious remarks during the conversation, as well as AL JANABI's overall demeanor towards MUNIZ in the past several months. GONZALEZ responded, "we're going to need to investigate this, I will get back to you."

52.  On or about January 2020, Plaintiff MUNIZ received a telephone call from VAN DE WYNGAERDE asking the Plaintiff to come to the plant that day. Plaintiff encountered both VAN DE WYNGAERDE and AL JANABI in AL JANABI's office. During the conversation, VAN DE WYNGAERDE explained that it is in the best interest of the company for Plaintiff MUNIZ to take a leave of absence because they do not have the budget to maintain two backup planners.

53.  On or about January 27, 2020, GONZALEZ called Plaintiff and stated that management had decided it would be best for him to take a medical leave and that she would be contacting the Plaintiff soon with the necessary paperwork. No further explanations or reasons were given for his sudden placement on medical leave. Plaintiff MUNIZ again mentioned his complaints, but GONZALEZ did not respond to MUNIZ's inquiries. Shortly afterwards, Plaintiff MUNIZ had his work desktop shut down and became excluded from all his department contacts and emails.

//
//

54. On or about February 4, 2020, Plaintiff received the medical leave paperwork and was instructed to fill them out by HR. He received no further correspondence regarding his complaints. Plaintiff regularly informed HR of any developments with his medical issues during his forced medical leave.

55. On or aroundJanuary 30, 2021 Plaintiff MUNIZ received COBRA paperwork from HR via email, signaling to MUNIZ that he has been terminated.

56. Plaintiff MUNIZ is informed and believes that his disability was a factor in Defendant KROGER's decision to place him on leave.

57. Instead of accommodating Plaintiff, Defendants placed Plaintiff on leave despite the fact that they were aware of his disability and corresponding doctor visits.

58. Defendants did not engage in a timely, good faith interactive process with Plaintiff to find an accommodation for Plaintiff's disability.

59. Plaintiff did not cause the breakdown of the interactive process with Defendants. Rather, Defendants caused the breakdown in the interactive process with Plaintiff when it refused to provide Plaintiff accommodations for his disability.

60. As a direct and legal result of Defendants' failure to engage in a good faith, timely interactive process, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

//

//

61.   Said discrimination and/or refusal to accommodate/engage in the interactive process was wrongful and justifies the imposition of punitive damages since the failure to accommodate and involuntary leave was against public policy.   Defendants intentionally discriminated against Plaintiff on account of his disability and/or his complaints about the same, acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Defendants acted with an evil purpose, in an intentional and deliberate manner, in violation of Plaintiff's civil rights, and/or with a conscious disregard of Plaintiff's rights.   Based upon the foregoing, Plaintiff is entitled to recover punitive damages in an amount according to proof from Defendants and each of them.

## **THIRD CAUSE OF ACTION**

### **Failure to Accommodate**

### **(Plaintiff MUNIZ Against ALL Defendants)**

62.   Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

63.   Plaintiff, at all relevant times herein, suffered a FEHA protected disability.

64.   Defendants were aware of Plaintiff's disability, set forth in detail above, because Plaintiff informed them of his disability and corresponding doctor visits.

65.   On or about July 27, 2015 Plaintiff Muniz, a disabled male, began working for Defendant KROGER as a Plant Planner Administrative.   In or around 2017, Plaintiff MUNIZ demonstrated  great work performance  and was promoted to a Manufacturing Maintenance Planner position.

66.   On or about March 2018 Plaintiff suffered a knee injury. Plaintiff MUNIZ advised Mike Van De Wyngaerde, the Plant Engineer for La Habra Bakery, ("VAN DE WYNGAERDE") of his

1    injury at the time. Plaintiff did not require any light duty immediately following this injury.

2    However, Plaintiff's knee condition worsened over time.

3

4    67.  On or about late September 2019 Moh Al Janabi (hereinafter referred to as "AL JANABI")

5         started working as a supervisor at the same location as Plaintiff.

6

7    68.  On or about November 8, 2019, Plaintiff MUNIZ received a doctor's note stating that MUNIZ

8         be placed on light duty and for remote work to be made available for Plaintiff due to his knee

9         issues. Plaintiff gave the doctor's note to "VAN DE WYNGAERDE. Plaintiff MUNIZ was

10        told to work remotely as a backup planner and to train Trenton Lyhane ("LYHANE").

11

12   69.  On or about December 3, 2019, VAN DE WYNGAERDE reached out to Plaintiff MUNIZ to

13        ask for updates regarding a potential knee surgery timeline for Plaintiff MUNIZ.

14

15   70.  On or about December 6, 2019, after working from home for nearly a month with no significant

16        issue, Plaintiff MUNIZ received a telephone call from AL JANABI. AL JANABI berated

17        MUNIZ about backlog issues and went on to insist "well, you're going to have to work above

18        and beyond your hours." After the Plaintiff explained that he has been working on resolving

19        the backlog of work for the past several months and continued to work on processing the

20        backlog as quickly as he could, AL JANABI responded by asking "*what have you been doing*

21        *here since you've been here*?".

22

23   71.  On or about December 20, 2019, AL JANABI sent an email to the Maintenance team stating

24        that LYHANE will be the on-site primary planner and Plaintiff MUNIZ will be working

25        remotely whenever LYHANE needs his assistance. The email did not specify an end date to

26        this arrangement. Plaintiff MUNIZ continued to do planning, work on the backlog, worked on

27        reports, assisted corporate reporting and performed the majority of his job tasks remotely.

28   //

72.   On or about December 27, 2019, Plaintiff MUNIZ approached GONZALEZ, a Senior Human Resources representative at KROGER, about his December 6th telephone call with AL JANABI. Plaintiff MUNIZ explained AL JANABI's acrimonious remarks during the conversation, as well as AL JANABI's overall demeanor towards MUNIZ in the past several months. GONZALEZ responded, "we're going to need to investigate this, I will get back to you."

73.   On or about January 2020, Plaintiff MUNIZ received a telephone call from VAN DE WYNGAERDE asking the Plaintiff to come to the plant that day. Plaintiff encountered both VAN DE WYNGAERDE and AL JANABI in AL JANABI's office. During the conversation, VAN DE WYNGAERDE explained that it is in the best interest of the company for Plaintiff MUNIZ to take a leave of absence because they do not have the budget to maintain two backup planners.

74.   On or about January 27, 2020, GONZALEZ called Plaintiff and stated that management had decided it would be best for him to take a medical leave and that she would be contacting the Plaintiff soon with the necessary paperwork. No further explanations or reasons were given for his sudden placement on medical leave. Plaintiff MUNIZ again mentioned his complaints, but GONZALEZ did not respond to MUNIZ's inquiries. Shortly afterwards, Plaintiff MUNIZ had his work desktop shut down and became excluded from all his department contacts and emails.

75.   On or about February 4, 2020, Plaintiff received the medical leave paperwork and was instructed to fill them out by HR. He received no further correspondence regarding his complaints. Plaintiff regularly informed HR of any developments with his medical issues during his forced medical leave.

76.   On or aroundJanuary 30, 2021 Plaintiff MUNIZ received COBRA paperwork from HR via email, signaling to MUNIZ that he has been terminated.

77.   Plaintiff MUNIZ is informed and believes that his disability was a factor in Defendant KROGER's decision to place him on an involuntary leave.

78.   Defendants have an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation. FEHA entitles disabled employees to preferential consideration in reassignment of existing employees. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal. App.4th 245.)

79.   As a direct and legal result of Defendants' failure to accommodate Plaintiff's disabilities, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

80.   Said discrimination and/or refusal to accommodate/engage in the interactive process was wrongful and justifies the imposition of punitive damages since refusing to accommodate Plaintiff's work restrictions was against public policy. Defendants intentionally failed to accommodate Plaintiff, acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Defendants acted with an evil purpose, in an intentional and deliberate manner, in violation of Plaintiff's civil rights, and/or with a conscious disregard of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages in an amount according to proof from Defendants and each of them.

//
//
//
//
//
//
//

## FOURTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### (Plaintiff MUNIZ Against ALL Defendants)

81.   PLAINTIFF incorporates by reference and realleges each of the foregoing paragraphs.

82.   At all times mentioned in this complaint, KROGER regularly employed five or more persons, bringing KROGER within the provisions of the FEHA, Gov. Code, § 12926(d).

83.   This cause of action is brought pursuant to the FEHA, Gov. Code, § 12940(h) preventing KROGER from discharging or otherwise discriminating against any employee, such as Plaintiff MUNIZ, for exercising rights protected under the FEHA.

84.   On or about July 27, 2015 Plaintiff Muniz, a disabled male, began working for Defendant KROGER as a Plant Planner Administrative.   In or around 2017, Plaintiff MUNIZ demonstrated  great work performance  and was promoted to a Manufacturing Maintenance Planner position.

85.   On or about March 2018 Plaintiff suffered a knee injury. Plaintiff MUNIZ advised Mike Van De Wyngaerde, the Plant Engineer for La Habra Bakery, ("VAN DE WYNGAERDE") of his injury at the time. Plaintiff did not require any light duty immediately following this injury. However, Plaintiff's knee condition worsened over time.

86.   On or about late September 2019 Moh Al Janabi (hereinafter referred to as "AL JANABI") started working as a supervisor at the same location as Plaintiff.

87.   On or about November 8, 2019, Plaintiff MUNIZ received a doctor's note stating that MUNIZ be placed on light duty and for remote work to be made available for Plaintiff due to his knee

1      issues. Plaintiff gave the doctor's note to VAN DE WYNGAERDE. Plaintiff MUNIZ was told

2      to work remotely as a backup planner and to train Trenton Lyhane ("LYHANE").

3

4   88.   On or about December 3, 2019, VAN DE WYNGAERDE reached out to Plaintiff MUNIZ to

5      ask for updates regarding a potential knee surgery timeline for Plaintiff MUNIZ.

6

7   89.   On or about December 6, 2019, after working from home for nearly a month with no significant

8      issue, Plaintiff MUNIZ received a telephone call from AL JANABI. AL JANABI berated

9      MUNIZ about backlog issues and went on to insist "well, you're going to have to work above

10      and beyond your hours." After the Plaintiff explained that he has been working on resolving

11      the backlog of work for the past several months and continued to work on processing the

12      backlog as quickly as he could, AL JANABI responded by asking "*what have you been doing*

13      *here since you've been here*?".

14

15   90.   On or about December 20, 2019, AL JANABI sent an email to the Maintenance team stating

16      that LYHANE will be the on-site primary planner and Plaintiff MUNIZ will be working

17      remotely whenever LYHANE needs his assistance. The email did not specify an end date to

18      this arrangement. Plaintiff MUNIZ continued to do planning, work on the backlog, worked on

19      reports, assisted in corporate reporting and performed the majority of his job tasks remotely.

20

21   91.   On or about December 27, 2019, Plaintiff MUNIZ approached GONZALEZ, a Senior Human

22      Resources representative at KROGER, about his December 6th telephone call with AL

23      JANABI. Plaintiff MUNIZ explained AL JANABI's acrimonious remarks during the

24      conversation, as well as AL JANABI's overall demeanor towards MUNIZ in the past several

25      months. GONZALEZ responded, "we're going to need to investigate this, I will get back to

26      you."

27   //

28   //

92. On or about January 2020, Plaintiff MUNIZ received a telephone call from VAN DE WYNGAERDE asking the Plaintiff to come to the plant that day. Plaintiff encountered both VAN DE WYNGAERDE and AL JANABI in AL JANABI's office. During the conversation, VAN DE WYNGAERDE explained that it is in the best interest of the company for Plaintiff MUNIZ to take a leave of absence because they do not have the budget to maintain two backup planners.

93. On or about January 27, 2020, GONZALEZ called Plaintiff and stated that management had decided it would be best for him to take a medical leave and that she would be contacting the Plaintiff soon with the necessary paperwork. No further explanations or reasons were given for his sudden placement on medical leave. Plaintiff MUNIZ again mentioned his complaints, but GONZALEZ did not respond to MUNIZ's inquiries. Shortly afterwards, Plaintiff MUNIZ had his work desktop shut down and became excluded from all his department contacts and emails.

94. On or about February 4, 2020, Plaintiff received the medical leave paperwork and was instructed to fill them out by HR. He received no further correspondence regarding his complaints. Plaintiff regularly informed HR of any developments with his medical issues during his forced medical leave.

95. On or aroundJanuary 30, 2021 Plaintiff MUNIZ received COBRA paperwork from HR via email, signaling to MUNIZ that he has been terminated.

96. KROGER engaged in a pattern and practice of retaliating against employees, including Plaintiff MUNIZ, for exercising protected rights. Defendants' adverse actions, including, but not limited to, Plaintiff MUNIZ's termination, failure to accommodate, and failure to engage in the interactive process were at least in part, in retaliation for Plaintiff MUNIZ making protected complaints and/or engaging in protected activities.

//

97.  Prior to filing this action, PLAINTIFF exhausted their administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter. timely filed a charge of discrimination and received a Notice of Right to Sue from the DFEH. Thus, PLAINTIFF has exhausted their administrative remedies.

98.  As the legal result of Defendants' conduct, Plaintiff MUNIZ has suffered and continues to suffer substantial losses of wages, salary, benefits and additional amounts of money that he would have received if Defendants had not retaliated against him as alleged above. As a result of Defendants' actions and consequent harm, Plaintiff MUNIZ has suffered such damages in an amount according to proof. Plaintiff MUNIZ's claims such amounts as damages pursuant to California Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

99.  As the further legal result of Defendants' conduct, Plaintiff MUNIZ has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress, all to his damage in an amount according to proof.

100.  As the further legal result of Defendants conduct, Plaintiff MUNIZ has been harmed in that he has suffered the intangible loss of such employment-related opportunities as experience and status in the positions previously held by him, those he would have held, all to his damage in an amount according to proof.

101.  The above-cited conduct of Defendants was done with malice, fraud and oppression, and in reckless disregard of Plaintiff MUNIZ's rights under the FEHA. Defendants consciously, intentionally and in conscious disregard of his rights, retaliated against Plaintiff MUNIZ. Plaintiff MUNIZ is thus entitled to recover punitive damages from Defendants in an amount according to proof. As the result of Defendants discriminatory and retaliatory acts as alleged

1    herein, Plaintiff MUNIZ is entitled to reasonable attorneys' fees and costs of suit as provided
2    by California Government Code, § 12965(b).

3

4                                          **PRAYER**

5

6    1.   For damages according to proof;

7

8    2.   For interest on the amount of unpaid wages, and other employee benefits at the prevailing legal
9         rate;

10

11   3.   For general and special damages as may be appropriate;

12

13   4.   For general damages, according to proof;

14

15   5.   For other special damages, according to proof, including but not limited to reasonable medical
16        expenses;

17

18   6.   For statutory penalties pursuant to California Labor Code § 226(e);

19

20   7.   For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amounts
21        were due and payable;

22

23   8.   For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in
24        obtaining the benefits due Plaintiff and for violations of Plaintiffs' civil rights as set forth
25        above; and pursuant to the Labor Code §§ 218.5, 218.6, 226(e), 1194(a), 2699; and California
26        Code of Civil Procedure section 1021.5; and

27

28   9.   For such other and further relief as the court deems just and proper.

Dated: February 26, 2021

WEST COAST EMPLOYMENT LAWYERS, APLC

By: _____
     Ronald L. Zambrano, Esq.
     Sandra Acosta Tello, Esq.
     Attorneys for Plaintiff
     ELIAS MUNIZ

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully demands a jury trial.

Dated: February 26, 2021

WEST COAST EMPLOYMENT LAWYERS, APLC

By: _____
     Ronald L. Zambrano, Esq.
     Sandra Acosta Tello, Esq.
     Attorneys for Plaintiff
     ELIAS MUNIZ

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):

Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its website as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

### ADR Information

Introduction.

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

Save Time. A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

Save Money. When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

Increase Control Over the Process and the Outcome. In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

Preserve Relationships. ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

Increase Satisfaction. In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

Improve Attorney-Client Relationships. Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

Loss of protections. If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

Less discovery. There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

Additional costs. The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Effect of delays if the dispute is not resolved. Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

Arbitration. In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

 Cases for Which Arbitration May Be Appropriate. Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

 Cases for Which Arbitration May Not Be Appropriate. If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

Mediation. In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

 Cases for Which Mediation May Be Appropriate. Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

 Cases for Which Mediation May Not Be Appropriate. Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

Neutral Evaluation. In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

Cases for Which Neutral Evaluation May Be Appropriate. Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

Cases for Which Neutral Evaluation May Not Be Appropriate. Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

Settlement Conferences. Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

ADDITIONAL INFORMATION.

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, at 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the telephone directories under "Arbitrators" or "Mediators"

Low cost mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- OC Human Relations (714) 480-6575, mediator@ochumanrelations.org
- Waymakers (949) 250-4058

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY:     STATE BAR NO.: <br> NAME: <br> FIRM NAME: <br> STREET ADDRESS: <br> CITY:                     STATE:        ZIP CODE: <br> TELEPHONE NO.:            FAX NO.: <br> E-MAIL ADDRESS: <br> ATTORNEY FOR (name): | FOR COURT USE ONLY |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor – Newport Beach Facility -- 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13th Street, Westminster, CA 92683-4593

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION | CASE NUMBER: |
|---|---|

*For your protection and privacy, please press the Clear This Form button after you are done printing this form.*

Plaintiff(s)/Petitioner(s), _____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
       ☐ Under section 1141.11 of the Code of Civil Procedure
       ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an Order on Court Fee Waiver (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals. We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court, rule 3.720 et seq.

Date:_____     _____     _____
                           (SIGNATURE OF PLAINTIFF OR ATTORNEY)       (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date:_____     _____     _____
                           (SIGNATURE OF DEFENDANT OR ATTORNEY)       (SIGNATURE OF DEFENDANT OR ATTORNEY)

ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION